## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| **LATRICIA BROWN**, individually and on behalf of all others similarly situated, | : : : : : |
| Plaintiff, | : Case No: |
| | : |
| v. | : Hon. |
| | : |
| **AUTO CLUB SERVICES INC.,** and **THE AUTO CLUB GROUP INC.**, jointly and severally, | : Mag. : : : |
| Defendants. | : |

## COLLECTIVE AND CLASS ACTION COMPLAINT AND JURY DEMAND

Plaintiff, LaTricia Brown ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, hereby brings this Collective and Class Action against Defendants Auto Club Services, Inc. ("ACS") and The Auto Club Group ("ACG") (collectively "Defendants"), and states as follows:

### INTRODUCTION

1.      This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendants, arising from Defendants' willful

violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., Fed. R. Civ. P. 23, and common law.

2.    According to Defendants' website their employees "Help AAA Members enjoy life's journey with peace of mind by providing innovative solutions, advocacy, and membership benefits wherever and whenever they need them."[1] "AAA has grown to over 60 million members strong, while providing valuable membership services such as roadside assistance."[2]

3.    In order to provide the aforementioned services, Defendants employ hourly (non-exempt) employees with a number of job titles, including but not limited to Call Managers, Customer Service Representatives, Customer Sales Representatives and Dispatchers (hereinafter collectively referred to as "Representatives"). Defendants employ their Representatives in their brick-and-mortar contact centers and remotely in Michigan and throughout the United States. Defendants rely heavily on Representatives to field inbound customer and member calls and respond to and/or troubleshoot member inquiries and problems.

4.    Defendants employed Plaintiff as hourly non-exempt representative.

5.    Regardless of the specific job title, all Representatives were paid: on an hourly basis; are classified as non-exempt employees; regularly worked forty (40)

---

[1] *See* https://www.acg.aaa.com/about/careers-with-aaa.html (last visited October 7, 2025).
[2] *See* https://www.acg.aaa.com/about.html (last visited October 8, 2025).

or more hours per workweek; relied on a computer and essential computer programs to perform their job duties daily; required to perform work off-the-clock before and after their scheduled shifts when they were not logged into Defendants' timekeeping system; and subject to the same relevant policies.

6.     The U.S. Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendants' Representatives, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[3]

7.     One of those abuses, which is occurring in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

8.     The DOL's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift and post-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails." *Id*.   Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

---

[3] *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers   (last   visited October 7, 2025).

9.     Defendants violated the FLSA and common law by systematically failing to compensate their Representatives for work tasks completed before and after their scheduled shifts when they were not logged into Defendants' timekeeping system.  This policy resulted in Representatives not being paid for all overtime hours worked, overtime gap time when associated with unpaid overtime, and in non-overtime workweeks for regular hours.

10.     More specifically, Defendants failed to compensate their Representatives for the substantial time they spent performing essential work tasks prior to clocking into and after clocking out of Defendants' timekeeping system each shift.

11.     Plaintiff seeks a declaration that her rights, and the rights of the putative Collective and Class members, were violated, a judgment awarding them unpaid back wages, liquidated damages, attorneys' fees and costs to make them and the putative Collective and Class whole for damages they suffered, and any other remedies to which they are entitled, and to help ensure Defendants will not subject future workers to the same illegal conduct in the future.

12.     At the earliest time possible, Plaintiff will request a Court-Authorized Notice of this action pursuant to 29 U.S.C. § 216(b) to all similarly situated employees who worked for Defendants at any time in the past three years.

## PARTIES

13.     Plaintiff is a resident of Grand Rapids, Michigan. Plaintiff worked for Defendants as an hourly, non-exempt remote call manager and dispatcher from approximately April 2019, through January 2025. Defendants compensated Plaintiff through the payment of an hourly rate, most recently at $24.53 per hour. Plaintiff signed a consent to join this collective action, which is attached as **Exhibit A**.

14.     Additional, putative collective members were or are employed by Defendants throughout the United States as non-exempt Representatives during the past three years and their consent forms will also be filed in this case.

15.     Defendant Auto Club Services Inc. ("ACS") is a Michigan corporation whose registered agent for service of process is listed as CT Corporation System, 40600 Ann Arbor Road East, Ste. 201, Plymouth, Michigan 48170.

16.     Defendant ACS maintains its principal place of business at 1 Auto Club Dr., Dearborn, Michigan 48126.

17.     Defendant The Auto Club Group Inc. ("ACG") is a Michigan nonprofit corporation whose registered agent for service of process is listed at CT Corporation System, 40600 Ann Arbor Road East, Ste. 201, Plymouth, Michigan 48170.

18.     Defendant ACS is a wholly owned subsidiary of ACG which is one of a federation of clubs conducting business under the American Automobile Association ("AAA") banner. Upon information and belief, Defendant ACS

5

operates as an integrated component of ACG's business process, which provides automobile services including but not limited to roadside assistance.[4]

## JURISDICTION AND VENUE

19.     This Court has subject-matter jurisdiction over Plaintiff's FLSA claims pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq.*

20.     Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

21.     Defendants' annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis. Defendants' employees engaged in interstate commerce and therefore they are also covered by the FLSA on an individual basis.

22.     This Court has personal jurisdiction over Defendant because it conducts business within the state of Michigan, employs individuals within the state of Michigan, is incorporated in the state of Michigan, and maintains its principal place of business in the state of Michigan.

---

[4] *See* https://www.federalreserve.gov/SECRS/2020/January/20200123/R-1673/R-1673_012120_137150_434289993541_1.pdf (last visited October 2, 2025).

23.     Venue lies in this District pursuant to 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction in this District.

24.     At all relevant times, ACS and ACG jointly employed Plaintiff and all other Representatives within the meaning of the FLSA, 29 U.S.C. § 203(d), maintained centralized control over terms and conditions of employment, and acted in a unified manner with respect to employment practices, policies, supervision, scheduling and payroll.

25.     Defendants are engaged in a single, integrated "enterprise" through "common operations" and/or "common control" under the FLSA, 29 U.S.C. §§ 201, *et seq*.

## GENERAL ALLEGATIONS

26.     Prior to hiring prospective Representatives, including Plaintiff, Defendants provided them with a written/verbal offer setting forth the job title, the offered rate of pay, and the conditions of their employment.

27.     Defendants maintained documents demonstrating the promised hourly wage for each Representative, including, but not limited to: offer letters, paystubs, and/or payroll records.

28.     Plaintiff and the Representatives received offer letters from Defendants to work as Representatives, and they accepted Defendants' offers with the understanding that their base rate would be paid for all hours worked.

29.     Plaintiff and the Representatives performed under their respective agreements with Defendants carrying out their job duties and responsibilities. More specifically, Plaintiff and the Representatives handled member service inquiries and requests for service. The aforementioned customer service was provided via inbound calls, and Plaintiff would utilize Defendants' applications and systems to track all events and customer service information. Plaintiff and the Representatives additionally performed the required unpaid off-the-clock work explained below.

30.     Defendants paid their Representatives varying hourly rates.

31.     Defendants' Representatives typically worked five (5) days each week and up to, and on occasion more than, forty (40) hours per week.  While Defendants have access to payroll records, Plaintiff does not, and there were one or more instances during Plaintiff's employment when she worked forty (40) or  more in a workweek and less than forty (40) hours in a work week.

32.     Defendants provided training to Representatives, like Plaintiff, with, *inter alia*, on how to carry out their day-to-day job duties, including how to load and log into their computer programs at the beginning of the day, and how to log out at the end of each day; how to track their time in Defendants' timekeeping system; attendance, schedule and call quality expectations; and Defendant's policies related to each topic. The training Defendants provided to all of their Representatives was substantially, if not entirely, the same and all Representatives were subject to the

same and/or substantially similar policies and quality assurance reviews.

33.     At all relevant times, Defendants controlled Plaintiff's and all other Representatives' work schedules, duties, protocols, applications, assignments, and employment conditions.

34.     Defendants required Plaintiff and all other Representatives to use a computer and a variety of integral and indispensable computer programs, applications, and servers that were necessary to the performance of their job duties.

35.     Defendants instructed Plaintiff and all other Representatives to be "call ready" the moment their scheduled shift started. This required Plaintiff and the Representatives to log into and load all of their essential work-related computer programs and applications prior to the start of their shifts so they could be prepared to take calls the moment their shift began.

36.     Defendants enforced their "call ready" policy and required their Representatives to perform off-the-clock through their uniform attendance, compensation, timekeeping, schedule adherence procedure, and call quality assurance metrics.

37.     Defendants maintained schedule adherence and attendance metrics pursuant to which it monitored the Representatives' clock in times in relation to their start of shift times, as well as the time the Representatives went into a "ready" status. Defendants enforced these policies and procedures by routinely evaluating, and at

times disciplining, the Representatives. The discipline included, but was not limited to, written warnings, verbal warnings, and termination.

38.    Thus, Defendants forced Plaintiff and their Representatives to perform the boot-up and login process before the start of their shift and before they were allowed to clock in.

39.    All of Defendants' Representatives used the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and indispensable part of the Representatives' work, and they could not perform their jobs without them.

40.    Similarly, Defendants' Representatives, including Plaintiff, performed work off-the-clock after their scheduled shift, after clocking out of Defendants' timekeeping system, when they shut-down/logged out of the programs and applications that they utilized during their shifts.

41.    At all relevant times, Defendants used their attendance and adherence policies against Plaintiff and the Representatives in order to pressure them into performing pre-and post-shift work off-the-clock.

42.    The pre- and post-shift off-the-clock time Plaintiff and all other Representatives spent booting up/logging into and shutting down their computers and applications and programs directly benefited Defendants and was integral and

indispensable to the Representatives' job responsibilities.

43.     As a result of the off-the-clock work described herein, Plaintiff and all other Representatives were unlawfully deprived of approximately eighteen (18) to forty (40) minutes of compensation every day.

44.     At all relevant times, Defendants were able to track the amount of time Plaintiff and their other Representatives spent in connection with the pre- and post-shift activities; however, Defendants failed to do so and failed to compensate Plaintiff and all other Representatives for the off-the-clock work they performed, thus breaching their agreements with the Representatives.

45.     Indeed, in light of the explicit and long-standing DOL guidance cited above, there is no conceivable way for Defendants to establish that they acted in good faith.

46.     Despite knowing Plaintiff and all other Representatives performed the pre- and post-shift work, Defendants and their managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

47.     Defendants possess, control, and/or have access to information and electronic data indicating the times Plaintiff and all other Representatives booted up and logged into their computers each shift, along with the time they logged into the timekeeping system.

48.     Because Defendants required their Representatives, including Plaintiff,

to perform pre- and post-shift work off-the-clock, the hours tracked in Defendants' timekeeping system are an inaccurate representation of the total amount of time Representatives spent working for Defendants. Thus, the hours reflected on the Representatives' paystubs are also inaccurate representations of the hours they actually worked.

## A. <u>Pre-Shift Off-the-Clock Work</u>

49.    The off-the-clock pre-shift process took substantial time on a daily basis, approximately fifteen (15) to thirty (30) minutes per shift.  Specifically, before each shift, Representatives were required to undertake essential work tasks such as turning on or waking up their computer; waiting for the computer to turn on; logging into their computer with a username and password; and connecting to Defendants' virtual private network ("VPN") Palo Alto Global Connect with a username and password; opening various programs and applications that were integral and indispensable to their job duties as Representatives (for example, Salesforce, Omni, Genesis Cloud, GPS locator system, Microsoft Teams, Service Now, Nice/EX, Peoplesoft/Workday and Block ID via phone); and logging in.

50.    Defendants' Representatives had to complete much, if not all, of this process before: (1) the start of their scheduled shifts; (2) they were allowed to clock into Defendants' timekeeping program; and (3) fielding calls.  Consequently, the Representatives had to begin working at least fifteen (15) to thirty (30) minutes

before their scheduled shifts to complete their above-described start-up and log-in activities.

51.    Defendants' Representatives were not compensated for all of this time because, among other things, Defendants prohibited Representatives from clocking into their timekeeping software until a limited and finite number of minutes before the start of their scheduled shift, and the boot-up process took longer than this amount of time to perform each day.

52.    The pre-shift off-the-clock work Representatives performed directly benefited Defendants and was integral and indispensable to their job duties and responsibilities as Representatives.

53.    Thus, in workweeks where Defendants' Representatives worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, Defendants violated the FLSA by failing to: (1) pay them the federally mandated overtime compensation for all work performed; (2) pay them straight time for all regular hours worked up to forty (40); and (3) record all of the time that their Representatives, including Plaintiff, worked for Defendants' benefit.

54.    If Representatives started logging in immediately prior to their scheduled shifts, they were in danger of clocking in late because they could not complete the required pre-shift work necessary to be "call ready" when their

scheduled shifts began and it was time to clock in, and the would therefore receive a tardy on their records and poor schedule adherence scores.

55.     Defendants' Representatives were only compensated for the time spent on the phone or in "call ready" status.

56.     Because Defendants' Representatives typically worked scheduled shifts of at least 40 hours per week, their required pre-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

57.     Defendants had express and constructive knowledge that their Representatives began the pre-shift boot-up and login process while off-the-clock in order to make they were "call ready" and clocked in on time.

58.     Defendants' policies and practices discouraged their Representatives from recording all time worked.

**B. <u>Post-Shift Off-the-Clock Work</u>**

59.     Pursuant to Defendants' policies, training, and direction, Plaintiff and all other Representatives were required to clock-out the moment their scheduled shift concluded when they finished fielding their last member or customer call for the shift and before completing call documentation, sending emails, closing programs and applications they used during their scheduled shift, and shutting down their system.

60.     This resulted in Plaintiff and Representatives performing

approximately three (3) to ten (10) minutes of off-the-clock work every shift.

61.     Thus, in workweeks where Defendants' Representatives worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock work time discussed herein, Defendants violated the FLSA by failing to: (1) pay them the federally mandated overtime compensation for all work performed; (2) pay them straight time for all regular hours worked up to forty (40); and (3) record all of the time that their Representatives, including Plaintiff, worked for Defendants' benefit.

62.     The post-shift off-the-clock work Plaintiff and other Representatives performed was compensable, directly benefited Defendants, and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to the Representatives' job duties and responsibilities.

**C. The Off-the-Clock Work Results in Viable "Gap Time" Claims**

63.     "There are two types of gap time claims: pure gap time claims – when an employee has not worked more than 40 hours in a workweek and seeks compensation for unpaid hours – and overtime gap time claims – when an employee has worked more than 40 hours in a workweek but nevertheless has not been paid for all of the regular-time hours that she worked at the regular wage rate." *Athan v. United States Steel*, 354 F. Supp. 3d 748, 754 (E.D. Mich. 2019).

64.     Plaintiff, and similarly situated Representatives, regularly worked non-overtime hours (i.e., "gap time") for which they were not paid.

65.     During the weeks that Representatives do not work over forty (40) hours in a workweek, the outcome of Defendants' policies and practices were a deprivation of straight-time wages, in breach of Defendants' contracts with their Representatives.

**D.** **Exemplary Workweek**

66.     The FLSA wage violations discussed herein occurred throughout Plaintiff's employment with Defendants; however, as example of instances where Defendants failed to pay Plaintiff regular wages for work performed and overtime for hours worked in excess of forty (40) hours (as mandated by the FLSA), Plaintiff identifies the following earnings statements:

**December 21, 2024 Earnings Statement**

**(December 8 – 14, 2024 Workweek)**

- Plaintiff worked less than 40 hours in the workweek at a rate of $24.53 per hour and upon information and belief was paid $24.53 for each regular hour worked.

- With pre- and post-shift off-the-clock work, Plaintiff should have been paid an additional 18 to 40 minutes or more at her regular rate of $24.53 for each regular hour.

**(December 15 – 21, 2024 Workweek)**

- Plaintiff worked 40 hours in the workweek at a rate of $24.53 per hour and upon information and belief was paid $24.53 for each regular hour worked.

- With pre- and post-shift off-the-clock work, Plaintiff should have been paid an additional 18 to 40 minutes or more at her overtime rate, which should be calculated at one-and-a-half times her regular rate of pay.

**Exhibit B**, Brown 12/8/24 – 12/21/24 Earnings Statement.

### E. Defendants Benefitted from the Representatives' Off-the-Clock Work

67.     At all relevant times, Defendants required and directly benefitted from the off-the-clock work performed by Plaintiff and all other Representatives in connection with the pre- and post-shift activities described above.

68.     At all relevant times, Defendants controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiff and all other Representatives.

69.     At all relevant times, Defendants have been able to track the amount of time Plaintiff, and all other Representatives spend in connection with the pre- and post-shift activities; however, Defendants failed to do so and failed to compensate Plaintiff and all other Representatives for the off-the-clock work they performed.

70.     At all relevant times, Plaintiff and all other Representatives have been non-exempt hourly employees, subject to the requirements of the FLSA.

71.     At all relevant times, Defendants used their attendance and adherence policies against Plaintiff and the Representatives in order to pressure them into performing pre- and post-shift work off-the-clock.

72.     Defendants expressly trained and instructed Plaintiff and all other Representatives to perform these off-the-clock activities when they were not clocked into Defendants' timekeeping system.

73.     Defendants instructed their Representatives to have all work applications and systems fully loaded before the start of their shifts, which takes them in the range of fifteen (15) to thirty (30) minutes per day, but Defendants prohibited their Representatives from clocking into the timekeeping software  and marking themselves "call ready" before the start of the scheduled shift while simultaneously requiring the Representatives to be call ready the moment their shifts begin.

74.     Additionally, Defendants instructed their Representatives to shut down/log out of all work applications and systems after the end of their shift, which takes them in the range of three (3) to ten (10) minutes per day, but Defendants prohibited their Representatives from performing this post-shift work until they clocked out of the timekeeping software at the end of the scheduled shift.

75. At all relevant times, Defendants' policies and practices deprived Plaintiff and the Representatives of wages owed for the pre- and post-shift activities they performed.

76. During the weeks that Representatives work over forty (40) hours in a workweek, the outcome of Defendants' policies and practices is a deprivation of overtime wages, which are compensable under the FLSA.

77. Defendants are in possession of the payroll and timekeeping records that will illustrate exactly which weeks Plaintiff and the Representatives worked over forty (40) hours and exactly which weeks they worked under forty (40) hours.

78. Defendants have known or should have known that the time spent by Plaintiff and other Representatives in connection with the pre- and post-shift activities is compensable under the law. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith by not compensating the Representatives for the time at issue in this action.

79. Unpaid wages related to the off-the-clock work described herein are owed to Plaintiff at the FLSA-mandated overtime premium of one and one-half the Plaintiff's regular hourly rate because Plaintiff worked in excess of forty (40) hours in a workweek.

## **FLSA COLLECTIVE ACTION ALLEGATIONS**

80.    Pursuant to 29 U.S.C § 216(b), Plaintiff brings this action on behalf of:

*All current and former hourly Representatives who worked for Defendants at any time during the past three years preceding the filing of this Complaint up through and including judgment.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

81.    Defendants are liable under the FLSA, for *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

82.    Excluded from the proposed FLSA Collective are Defendants' executives, administrative and professional employees, including computer professionals and outside salespersons.

83.    Defendants are engaged in a common "enterprise" through "common operations" and/or "common control" under the FLSA, 29 U.S.C. § 203(r)(1), subject to the provisions of 29 U.S.C. §§ 201, *et seq.*; 29 C.F.R. § 791.237.

84.    Defendants are "joint employers" within the meaning of the FLSA, and have, to their mutual benefit and competitive advantage, harmed Plaintiff and all other similarly situated in violation of the FLSA.

85.    Consistent with Defendants' policies and practice, Plaintiff and the proposed FLSA Collective were not paid for all straight and/or premium overtime

compensation in workweeks during which they worked forty (40) hours or more when considering the uncompensated off-the-clock work discussed herein.

86.     All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendants, and/or Defendants were aware of all of the work Plaintiff and the proposed FLSA Collective performed.

87.     Defendants were aware, or should have been aware, that federal law required them to pay Plaintiff and the proposed FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

88.     As part of their regular business practice, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice includes, but is not limited to:

> a.     Willfully failing to pay their employees, including Plaintiff and the FLSA Collective members, for all regular hours they worked off-the-clock in non-overtime workweeks;
>
> b.     Willfully failing to pay their employees, including Plaintiff and the FLSA Collective members, for all overtime gap time and premium overtime wages for hours that they worked off-the-clock in excess of forty (40) hours per workweek; and
>
> c.     Willfully failing to record all of the time that their employees, including Plaintiff and the FLSA Collective members, have worked for the benefit of Defendants.

89.     Defendants' unlawful conduct has been widespread, repeated, and consistent.

90.     A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff bring this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

91.     The employment relationships between Defendants and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues are the same for every proposed FLSA Collective member, to wit: whether the FLSA Collective members are (1) required to work without compensation due to uncompensated boot-up and shutdown time; and 2) entitled to their regular hourly wage, including a shift differential where applicable, in non-overtime workweeks, overtime gap time in applicable weeks and overtime for hours worked over forty (40) in a week.

92.     Plaintiff estimates the FLSA Collective, including both current and former Representatives over the relevant period, includes hundreds, if not thousands,

of members.  The precise number should be readily available from a review of Defendants' personnel and payroll records.

93.     Upon information and belief, Defendants utilized a centralized payroll system which calculated overtime pay for all similarly situated employees in the same or similar manner.

94.     These similarly situated individuals are known to the Defendants, are readily identifiable, and can be located through Defendant's payroll records, which Defendants are required to maintain pursuant to the FLSA. 29 U.S.C. § 2119(c); 29 C.F.R. § 516 *et seq.*

95.     The FLSA Collective should be notified of this action and allowed to opt-in pursuant to 29 U.S.C. § 216.  Unless, the Court promptly issues such notice, the FLSA Collective members, who were lawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which Defendants unlawfully withheld from them.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

96.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of themselves and on behalf of:

*All current and former hourly Representatives who worked for Defendants at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

97.    The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds or thousands of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendants' computer systems and electronic payroll and personnel records.

98.    There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions include, but are not limited to, the following:

  a.  Whether the pre-shift time Rule 23 Nationwide Class members spent on startup and login activities each shift is compensable time under applicable law;

  b.  Whether the post-shift time Rule 23 Nationwide Class members spent closing all programs, applications, and networks is compensable time under applicable law;

  c.  Whether Defendants' non-payment of wages for all compensable time amounted to a breach of contract; and

  d.  Whether Defendants' non-payment of wages for all compensable time resulted in an unjust enrichment to Defendants.

99.    Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that they and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendants' common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises, and course of conduct as all other Rule 23 Nationwide Class members' claims, and their legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

100.   Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

101.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

102.   This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced

networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

103.   Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

104.   Because Defendants have acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
## VIOLATIONS OF THE FAIR LABOR STANDARDS ACT, 29 U.S.C. § 201, *et seq.* -- FAILURE TO PAY OVERTIME

105.   Plaintiff re-alleges and incorporates all previous paragraphs herein.

106.   At all times relevant to this action, Defendants were subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

107.   At all times relevant to this action, Defendants were engaged in interstate commerce or in the production of goods for commerce, as defined by the FLSA.

108.   At all times relevant to this action, Plaintiff and the FLSA Collective

were "employees" of Defendants within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

109.   At all times relevant to this action, Defendants "suffered or permitted" Plaintiff and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

110.   Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

111.   Plaintiff either: 1) engaged in commerce; 2) engaged in the production of goods for commerce; or 3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

112.   The FLSA requires an employer to pay employees for all hours worked at the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

113.   The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

114.   At all relevant times to this action, Defendants engaged in an unlawful policy and practice of requiring Plaintiff and all the FLSA Collective members to

work off-the-clock every shift, and failed to pay these employees their regular hourly rate for all hours worked in non-overtime workweeks, overtime gap time in weeks where it occurred and the federally mandated overtime compensation for all work performed over forty (40) hours per week.

115.   The off-the-clock work performed every shift by Plaintiff and the proposed FLSA Collective was an essential part of their jobs and these activities, and the time associated with these activities was not significant.

116.   In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty hours when considering the uncompensated off-the-clock work time discussed herein, all of this overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including shift differential where applicable. 29 U.S.C. § 207.  Further, all "gap time" should have been paid at Plaintiff and the FLSA Collective's regular hourly rate.

117.   Defendants' violations of the FLSA were knowing and willful. Defendants could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective members for all work activities but did not.

118.   As a result of the foregoing, Plaintiff was injured and seeks appropriate relief against Defendants including unpaid wages (including unpaid overtime), an additional equal amount in liquidated damages (double damages), reasonable

attorneys' fees and costs, interest, and all other relief just and appropriate under the circumstances.

**COUNT II**
**RULE 23 NATIONWIDE CLASS ACTION**
**NATIONWIDE BREACH OF CONTRACT**

119.    Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

120.    At all times relevant to this action, Defendants had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendants.

121.    Evidence of these contracts includes Defendants' letters offering employment, pay statements, and other documentary evidence in Defendants' possession. Additionally, Defendants made verbal offers for payment at a specified, above minimum wage for Representative work, which Plaintiff accepted and performed, but Defendants failed to perform by paying Plaintiff and the Rule 23 Class the promised wages.

122.    For example, Defendants offered to compensate Plaintiff at a minimum of $24.53 per hour if she agreed to perform services for Defendants as a

Representative. Plaintiff accepted Defendants' offer and performed her duties as a Representative in reliance on the offer.

123.   Defendants breached their contractual promises by failing to pay Representatives at their fixed, pre-agreed-upon hourly rate for *all* of the hours worked.   This time includes hours worked before Plaintiff and the Rule 23 Nationwide Class reached forty (40) hours per week and at a rate that averaged out to more than the applicable minimum wage.

124.   Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, were contractually entitled to varying minimum hourly rates within the applicable period.

125.   Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendants' contractual promises contained in Defendants' offer letters and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre- and post-shift work described herein.

126.   By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work described herein, Defendants systematically breached their contracts with Plaintiff and each member of the Rule 23 Nationwide Class.

127.   Defendants can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendants' payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

128.   Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendants paid them more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (i.e., pure "gap time" claims for non-overtime hours/workweeks).

129.   Defendants also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

130.   As a direct and proximate result of Defendants' contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

## COUNT III
## RULE 23 NATIONWIDE CLASS ACTION
## NATIONWIDE UNJUST ENRICHMENT

131.   Plaintiff re-alleges and incorporates all previous paragraphs herein.

132.   This Count is pled in the alternative to Count II, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

133.   At all times relevant to this action, Defendants promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for the benefit of Defendants.

134.   Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendants' promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

135.   By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendants were unjustly enriched.

136.   Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendants.

137.   Defendants received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

138.   Despite this, Defendants did not pay Plaintiff and the Rule 23 Nationwide Class for all of their work, which included that which they performed

up to, but not reaching, forty (40) hours per week, and at a rate that averaged out to more than the applicable minimum wage.

139.   Upon information and belief, Defendants used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance their various business ventures or pay their equity owners.

140.   Defendants have been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendants' benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

141.   Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendants' failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort, and their resources in a profitable manner.

142.   As a direct and proximate result of Defendants' actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## <u>RELIEF REQUESTED</u>

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, requests the following relief:

   a.   An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims

set forth herein (Count I);

b.  An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff' breach of contract claim (Count II);

c.  An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff' unjust enrichment claim (Count III);

d.  An Order compelling Defendants to disclose in computer format, or in print if no computer-readable format is available, the names, addresses, and e-mails of all proposed FLSA Collective members and Rule 23 Nationwide Class members, and authorizing Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class and collective members of their rights by law to join and participate in this lawsuit;

e.  An Order designating Plaintiff as representative of the FLSA Collective and the Rule 23 Nationwide Class, and undersigned counsel as Class counsel for the same;

f.  An Order declaring Defendants violated the FLSA and the Department of Labor's attendant regulations as cited herein;

g.  An Order declaring Defendants' violations of the FLSA were willful;

h.  An Order declaring Defendants breached their contracts with Plaintiff and the members of the Rule 23 Nationwide Class by failing to pay them for each hour they worked at a pre-established (contractual) regular hourly rate;

i.  An Order declaring Defendants were unjustly enriched by the off-the-clock work performed by Plaintiff and the members of the Rule 23 Nationwide Class;

j.  An Order granting judgment in favor of Plaintiff and against Defendants and awarding Plaintiff, the FLSA Collective and the Rule 23 Nationwide Class the full amount of damages and liquidated damages

available by law;

k.      An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

l.      An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

m.      An Order awarding such other and further relief as this Court deems appropriate.

## **DEMAND FOR JURY TRIAL**

Plaintiff and all others similarly situated hereby demand trial by jury on all issues in this Complaint that are so triable as a matter of right.

Date: October 9, 2025                    Respectfully submitted,

*/s/ Kevin J. Stoops*
Kevin J. Stoops (P64371)
Kathryn E. Milz (IL 6297213)
**SOMMERS SCHWARTZ, P.C.**
One Town Square, 17th Floor
Southfield, Michigan 48076
(248) 355-0300
kstoops@sommerspc.com
kmilz@sommerspc.com

*Attorneys for Plaintiff and the Proposed Collective*